May it please the court, my name is Helen Andrews and I, along with my co-counsel Cory Batza, represent appellant Charles Byrd. I will address the Fourth Amendment issue and my co-counsel will address the Fourteenth Amendment and the Leave to Amend issues. We intend to reserve three minutes of our time for rebuttal. This case concerns a pretrial detainee's right to privacy and whether the prison's policy of having female guards observe him on a daily basis from four to five feet away while he showers and performs bodily functions violates his constitutional rights. This case was improperly dismissed at the screening phase because Mr. Byrd has alleged sufficient facts that when taken as true state a claim that is plausible on its face. The district court was required to accept all the facts as true, to draw all reasonable inferences in favor of Mr. Byrd, and to construe Mr. Byrd's complaint liberally, which means it may only be dismissed if it is beyond a doubt that Mr. Byrd can prove no set of facts that would entitle him to relief. The district court dismissed Mr. Byrd's complaint seemingly on a dispositive issue of law when it stated that this is precisely the type of observation that has long been held constitutional. However, a closer look at Ninth Circuit precedent shows that this type of observation has never been held constitutional. On the contrary, the cases that the district court cites, Mischenfelder v. Sumner and Grumman v. Russian, expressly and strongly suggest that this type of observation would be a constitutional violation. They take great care to distinguish their facts from the facts that Mr. Byrd has alleged. And in addition, this court held in Mr. Byrd's prior en banc victory before this court that non-emergency cross-gender strip searches are unconstitutional as a matter of law. The facts that Mr. Byrd alleges of being observed while in the nude from four feet away present a factual scenario plausible to fit under this court's precedent in Mr. Byrd's prior en banc case. Under the Fourth Amendment, Mr. Byrd has alleged sufficient factual content that allows the court to draw the reasonable inference that the defendants are liable under Section 1983 for violating Mr. Byrd's right to bodily privacy. In Grumman and in Mischenfelder, the court relied on a fully developed factual record and it analyzed all the ways in which the prison balanced the privacy entrance of the pretrial detainees and the prisoners against the equal employment opportunities and the institutional security requirements of the prison guards. The court in Grumman distinguished that only male officers worked the tiers where the showers were located. Only males escorted the prisoners to the showers where they disrobed. And that there was no positions that involved females in close or prolonged surveillance of disrobed inmates. Only in light of these facts did the court establish that the prison established an acceptable balance between their institutional security concerns and the inmates' privacy rights. Here, Mr. Byrd has alleged an up-close and daily observation that does not show any accommodation of the prisoners' privacy rights. In fact, it suggests a deliberate indifference to the privacy rights of the inmates by requiring that female guards observe them on a daily basis from such a close proximity. Appellees don't contest the violation of Mr. Byrd's privacy rights. On the contrary, they present and argue factual bases that they have legitimate security interests. But as to their first argument that institutional security justifies this kind of observation, this court held in Byrd that although there are legitimate reasons for observation in general, they do not extend to cover cross-gender observation. Institutional security does not require both genders observing an inmate from four to five feet away. And counsel, we have not had any discovery on what exactly the state's procedures are or why they need to have women watching these men, correct? No, Your Honor, we've had no discovery at all. This was a 1915A screening by the judge without allowing the defense to respond at all. So all legitimate security interests are simply conjecture at this point. Was the dismissal when Mr. Byrd was unrepresented? Correct. It is a pro se complaint that he filed with the district court that was dismissed. And you were pro bono counselor? Yes, we are pro bono counselor. Are you willing to represent Mr. Byrd in the district court if the case was remanded? Unfortunately, we are appointed via a law school, so we won't be able to represent him in the trial court. Are you in law school? Yes, Your Honor. When do you graduate? I graduate in May. Are you from Pepperdine? Yes, Your Honor. Very well. But this was a 1915 dismissal, so if, you know, you often want to know from a party's perspective, victory for you in this case is what? For us it's a remand, a reversal of the district court's dismissal and a remand to allow Mr. Byrd to develop the record and proceed to trial. The full discovery, figure out what the state's justification for these rules really are. Correct, Your Honor. And you would request counsel be appointed at that point? Yes, Your Honor. If there are no further questions, I'd like to allow my co-counsel to address the 14th Amendment issues. Thank you. Are you also from Pepperdine? Yes, Your Honor. Thank you. May it please the Court, I am Cori Botzel, also counsel for the appellant, Mr. Charles Byrd. If I may go directly to a question asked earlier regarding the legitimate penological interests, there has been, as you noted, no discovery on the penological interests that the prisons were considering when instituting this policy. Actually, on the face of Mr. Byrd's complaint, this Court can see that there is no legitimate penological interest because the policy itself of Maricopa County, this prison, is not to allow for female guards to observe male pretrial detainees in the nude, absent emergency circumstances. And by flouting what is actually written in their policies, they have shown that they have no legitimate basis for doing so, at least at the pleading stage. The appellees have attempted to raise the legitimate penological interests of equal employment concerns and also prison safety. However, as my co-counsel noted, the connection between a legitimate penological interest and a cross-gender observation, as in this case, is tenuous at best. And we should, this Court should require the appellees to bring forth evidence that actually went through a thoughtful process in trying to accommodate both the female guards' equal employment rights and also the privacy rights of Mr. Byrd. Going to the Fourteenth Amendment punishment claim, the Supreme Court has established that pretrial detainees have a right to be free from all restrictions that amount to punishment. This is different than the standards under the Eighth Amendment, which require prisoners to prove cruel and unusual punishment. This Court defined punishment in Demme v. Arpaio as harm that significantly exceeds or is independent of the inherent discomforts of confinement. We would recognize that what is inherently discomforting about confinement would be occasional viewing of an inmate's naked body. However, in this case, Mr. Byrd is observed from four to five feet away on a daily basis by guards of the same gender that sexually abused him in his youth. That at least states a claim that what he is experiencing is significantly beyond what is normal in confinement. And that's enough to state a claim for punishment. From a practical perspective, though, some of these prisons are designed in such a way that the station location for these guards are in direct line of sight to these specific... So what is a prison to do in that circumstance? Not employ women? No, Your Honor, that's not the answer. However, the appellee should bring forth evidence that shows the exact structure of its prison and shows whether or not the view that female guards... Well, I recognize it's premature because we don't have the facts. But I was, as your co-counsel was arguing, wondering what is the result? If it turns out that these observations must be made and must be made at close quarters, is the only solution to hire male guards and preclude female prison guards from having that employment? No, Your Honor. There are other accommodations that prisons can make in acknowledging that prisoners do have fundamental rights to bodily privacy, such as using half doors on showers or using some sort of screen that they can shield their unclothed body to members of the opposite sex. And whether or not this is constitutional really depends on a balancing test under Bell and under Turner that the prison has to bring forth evidence that it has at least tried to accommodate prisoners' privacy rights and that their policy was reasonably related to a legitimate penological interest. And here, as we've stated, there is no such interest that's seen on the face of Mr. Byrd's complaint that have been supporting the policy, and the appellee should be required on remand to bring forth that evidence and show that they were at least trying to accommodate Mr. Byrd's rights. Going to the leave to amend issue, if this Court were to find any sort of deficiencies in Mr. Byrd's complaint, this Court should find that he should have been granted leave to amend. A district court does abuse its discretion if it denies leave to amend when it was not absolutely clear that amendment would be futile. Here, any technical deficiencies in Mr. Byrd's complaint could have easily been made. Therefore, this Court, if it were to find any deficiencies, should allow him to amend his complaint. Thank you, counsel. Thank you. Sounds pretty convincing. I did not go to Pepperdine. You didn't go to Yale, by any chance? No, I went to Penn. Well, that's close. Good afternoon, and may it please the Court. My name is Joe Branco, here on behalf of the Maricopa County defendants. It sounds like my job is now to limit the damage, but I do want to begin at what I truly believe is the crux of the case on appeal, and that's the inadequacy of this complaint. It is true that a district court is to liberally construe a complaint, but it is equally true that the district court cannot write it for Mr. Byrd. And in this case, in comparison to Grumman and Mischenfelder, there were several key differences, several factual allegations that were missing, and it was reasonable for the district court to dismiss Mr. Byrd's complaint at the screening stage because those factual allegations were missing, specifically with regard to the Fourth and Fourteenth Amendment right to privacy cases. It's clear that Mr. Byrd has alleged that he is observed on a daily basis and from a distance of four to five feet away, but the proximity and the daily frequency were not the only things that Grumman and Mischenfelder discussed, and it also included obstructions, the reason for the observation, the duration I think is most tellingly missing at this point from Mr. Byrd's second amended complaint. And the district court already pointed out that Mr. Byrd's complaint, his first amended complaint, was vague on the details of what it was that he was allegedly subjected to, and Mr. Byrd failed to amend the complaint to a satisfactory degree. It is not simply liberally construing the complaint that a district court does when it reviews, particularly at a screening stage. At this point, the county defendants have not had the opportunity to answer, have not had the opportunity, and likely will not have the opportunity to submit.  It sounds like it, Your Honor. But we don't have truly an opportunity to file a motion to dismiss in these cases because this jurisprudence of this Court has really frowned upon that. And so just like a district court would evaluate a motion to dismiss based on the context, in this case prison, and based on judicial experience, Your Honor, you brought up some of the practical realities of prison administration. These form the background for viewing Mr. Byrd's complaint and saying, is there a more likely explanation for the conduct of the defendants? At this point, what Mr. Byrd has alleged, and again, very minimal allegations factually, could just as easily be described as the kind of routine cell and shower checks that are performed by opposite sex guards across the country that are specifically contemplated and allowed under the Prison Rape Elimination Act guidelines  And so at this point, he has not alleged anything greater than what's already been included in Grumman and Mischenfelder and also what's contemplated in those guidelines. But those cases involved prisoners, not pretrial detainees, correct? Yes. Isn't that right there? Isn't that a way to distinguish those cases? Not necessarily, because there's no clear guidance from this Court that on this particular issue that it would be any greater for those. Right. But I think you just answered the question, right? You just said not necessarily because we haven't provided any guidance. Therefore, those cases can't preclude what they're looking for in this case, right? No, Your Honor. It's not that they couldn't preclude. It's that in this case, he hasn't alleged enough for him to get beyond those cases. What would get beyond? What would he have to allege? I do not know what he would need to allege because it would be entirely dependent upon the information that's in his possession. I assume if he was, you know, claiming that the — well, I think actually in one of the punishment cases, Summers v. Thurman, there was a discussion about prison officials, again, not pretrial detainees, but incarcerated, post-sentence individuals, who would observe an inmate showering or making fun of him or allegedly harassing him. And the Court actually upheld those actions, that conduct, even shower duty. Again, everything that we have here based on his complaint is nothing more than what could just as plausibly be a routine cell or shower check, just as easily as it could be some of the more egregious conduct that maybe for a pretrial detainee you would not have to put up with that was alleged in Summers v. Thurman. Shouldn't he be allowed to develop that record, though? No. He had the opportunity to allege more than he did. He was given specific guidance from the district court, and I think it's page 51 of the and says these allegations are too vague. And Mr. Byrd came back with a Second Amendment complaint and continued with these vague allegations. Counsel, if I dismissed every case, I'm a district court judge. If I dismissed every case from a pro se defendant or individual that failed to state every possible fact that's known to them about their particular claim, then we wouldn't have anything. My cases would be in this court every day, it sounds like. I'd be out of a job. And I think that it is important to be sensitive to that. But, Your Honor, there are examples. Someone who finds a hard fragment or something, a rock in their food, typically the district court will kick that as something that falls squarely within what this circuit and what the Supreme Court has already said is permissible conduct. Unless they demonstrate that it goes above and beyond that case law. We haven't clearly said this is permissible conduct. The Ninth Circuit has not ruled that — well, the Ninth Circuit has permitted shower duty. Right. But that gets back to my question. This is a pretrial detainee. There's a case, Stone v. City and County of San Francisco, where we held, or at least we wrote. You can maybe say it's dicta. But pretrial detainees possess greater constitutional rights than prisoners. Yes. And — So let's assume that's the case. Yes. So how do those two cases you keep going back to, how do they foreclose what these guys want over here? If this Court is to take the view that pretrial detainees have the opportunity to develop this case to demonstrate that their rights are somehow greater on this issue, there is nothing I can tell you that's not going to send this back. Because right now what we have in this circuit is Grumman and Mischenfelder. And that's what the district court relied on, and the court reasonably relied on that, again, based on the inadequate complaint that Mr. Byrd was given the opportunity to amend and did not do so. There are also decisions cited in the answering brief from sister circuits. And I apologize if I'm getting the distinction wrong in my head between pretrial detainee and post-sentence individual. Story v. Foote was an Eighth Circuit, I believe it's an Eighth Circuit case, that was dismissed at the screening stage. And, Your Honor, if the Court is going to remand on the basis of this distinction between the additional rights that a pretrial detainee may be afforded as opposed to a post-sentence individual, I would ask for the opportunity to file a briefing on that, simply looking at the other circuits around the country, if the Court would find that helpful. If it's not going to be helpful, then — Well, you can always do a 28-J. You don't even need our permission to do that. Thank you, Your Honor. But it seems to me that you've got two issues here. One is you've got the prisoner cases, and he's not exactly a prisoner. I mean, he's in prison, but he's not a prisoner. It's one of these legal constructs we have. And then, second, that the conduct complained about in his other cases are not exactly this. I've read the other Out-of-Circuit cases, and they're similar. There's the — after an emergency situation, they do strip searches, or they can view through the shower, but I think one of the cases says, but the window, it gets foggy, and so you can't always see what's going on in the shower. He alleges in the complaint, and I think I can understand what he's saying, is that when he's using the bathroom, there's a woman 5 feet from him staring at him. And so do you have any cases where that is the situation, the bathroom stall stare-down? I mean, do we have anything like that? Your Honor, I would quibble with the stare-down portion of that because, again, I think he very tellingly has not addressed the duration of the observation. But aside from that, the Johnson case out of the Seventh Circuit explicitly permitted vigilance. There were Oliver and Garrett. Again, these are not pretrial — necessarily pretrial detainees, but these cases from around the country allowed what could be construed as a greater amount of observation because this is not a strip search. This — and I think that is something that is important, and when I said at the beginning I would try to limit some of the damage. This isn't a strip search. It's not — But Oliver was summary judgment, correct? Yes. So it may be at the end of the day you're absolutely right, but to use a summary judgment case to get rid of a case on motion to dismiss, that's not totally square here. You're right, Your Honor, and that's why I relied on Story v. Foote as well because that was upheld specifically under the PLRA screening stage dismissal. Other than Story v. Foote, do you have any other cases you can point to which is motion to dismiss? Not that I can recall right now, Your Honor. Yes, Your Honor. Go ahead. No, no. I was just going to say, this — as much as Mr. Byrd has attempted to bootstrap his prior case and has attempted to sort of fit this observation in under the rubric of strip search, there's no reason why the district court needed to accept this, what he's alleged as a strip search, based on the case law. Well, let me say, you did not move to have this dismissed. Well, thank you, Your Honor. I have nothing further. If there's anything else that the Court would like me to answer about the complaint or about this case, I'm more than willing, but otherwise, I'm just going to take my seat. Thank you very much.    Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Just a couple brief points on rebuttal. First, Story v. Foote was a qualified immunity case that did analyze the facts, but that also alleged intermittent visual surveillance, which we've shown is not the case here. In addition, this can be viewed as a strip search. Your Honors, Maricopa County has a written policy that Mr. Byrd has alleged that a strip search is the visual scan of an inmate's body after all clothing has been removed. Mr. Byrd has alleged facts that he's being visually scanned after his clothing has been removed. So it's not a far stretch to see that this falls under Byrd's prior en banc victory. In addition, the Court stated in Byrd's prior case, quoted a First Circuit, that stated that the trend, if not the clearly established law, is that an inmate's constitutional rights are violated when he is observed in personal activities by members of the opposite gender, such as showering and using the toilet. In light of those cases, Mr. Byrd has alleged sufficient facts as a pretrial detainee or as a prisoner to show distinct facts from Mischenfelder and Grumman that strongly suggest that this is a constitutional violation. And Story v. Foote, which your opposing counsel raised, in that case that was where the guy was being brought into the prison and they did a search when he came back in, correct? Correct. As I understand the complaint here, he's not alleging that this happened when he would come in and they would watch him go to the bathroom. This would happen the duration of a time he was in prison. No, Your Honor. He alleged specifically, I believe it's on page 70 of the record, that he was viewed every day for five months while he was showering and performing bodily functions. If there are no further questions. Thank you, counsel. Thank you very much. The case will be submitted. And congratulations to all of you for really an excellent argument on both sides. Yes. Very good. Thank you. Thank you.
judges: Reinhardt, Owens, Mendoza